UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERNESTINE CHAMBLISS, | ) | CASE NO. 1:10-CV-1722 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Ernestine Chambliss's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

**I. PROCEDURAL HISTORY**

On October 5, 2006, Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income alleging a disability onset date of November 21, 2005. (Tr. 109-114). Plaintiff alleged limitations related to a ganglion cyst on her left wrist and lumbar degenerative disc disease. (Tr. 17-18). The claims were initially denied on December 29, 2006. (Tr. 80, 83). The claim was denied again after reconsideration on April 12, 2007. (Tr. 90, 93). After the second denial, Plaintiff filed a Written Request for Hearing on April 23, 2007. (Tr. 66). The hearing was held in front of Administrative Law Judge Edmund Round ("the ALJ" or "ALJ

Round") on February 20, 2009. (Tr. 24). On July 16, 2009, the ALJ released a written decision denying Plaintiff's applications for benefits. (Tr. 12-23). In the written decision the ALJ applied the familiar five-step sequential analysis.[1] (Tr. 15-23). Subsequently, Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council. (Tr. 11). This request for review was denied, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on December 22, 1945. (Tr. 117). She was 63 years old on the date of the hearing. (*See* Tr. 117). Plaintiff is a "person of advanced age" for purposes of Social

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." See 20 C.F.R §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e. working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled

(3) If a claimant is not doing substantial gainful activity and is suffering from a sever impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functioning capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Security Regulations. *See* 20 C.F.R. § 404.1563. Plaintiff attended school through the tenth grade and has worked as a retail sales clerk and an assembler. (Tr. 31-39).

## B. Medical Evidence[2]

On December 21, 2006, Dr. Eulogio Sioson, M.D. examined Plaintiff upon the request of the Bureau of Disability Determination ("BDD"). (Tr. 252-53). Dr. Sioson tested the strength in Plaintiff's wrist and rated Plaintiff's wrist flexors, wrist extensors, finger abductors, and finger adductors as normal. (Tr. 254). Additionally, Dr. Sioson designated Plaintiff's grasp, manipulation, pinch, and fine coordination functions as normal in both her right and left hands. *Id*. Dr. Sioson also performed range of motion ("ROM") tests on Plaintiff's wrists and observed that Plaintiff had a slightly reduced ROM in the dorsiflexion and palmar flexion motions in both her right and left wrists as well as reduced radial deviation and ulnar deviation motions in her left wrist. (Tr. 256).

On December 23, 2006, Dr. Sioson wrote a letter to the BDD summarizing his findings from the examination. (Tr. 258-60). In this letter, Dr. Sioson noted that Plaintiff complained of pain and numbness in both hands lasting about two hours a day. (Tr. 258). Plaintiff related this pain to carpal tunnel syndrome and the cyst on her left wrist. *Id*. Dr. Sioson diagnosed the mass on Plaintiff's left wrist as a cyst but did not comment on what caused the pain in her wrist or whether the pain was associated with the cyst. (Tr. 258-59). Plaintiff explained to the doctor that she was able to perform household chores at a slow pace. (Tr. 258). Dr. Sioson went on to note that Plaintiff was also able to dress, bathe, write, button, and tie on her own. (Tr. 258-59). Dr. Sioson also noted that Plaintiff had the ability to grasp and manipulate with both hands. *Id*. Dr.

---

[2] The summary of the medical evidence is limited to portions of the record that are relevant to the current review.

3

Sioson opined that Plaintiff may be limited by some pain restrictions but did not further indicate any limitations on Plaintiff's ability to perform basic work related activities. *Id*.

On December 28, 2006, Dr. W. Jerry McCloud, M.D. performed an assessment of Plaintiff's physical residual functioning capacity ("RFC"). (Tr. 416-31). Dr. McCloud found that Plaintiff had normal grip strength. (Tr. 417). Dr. McCloud opined that Plaintiff did not have any established manipulative limitations. (Tr. 419).

In December 2007, Plaintiff stated that she wanted to remove the cyst on her left wrist for cosmetic reasons. (Tr. 638). Thereafter, Plaintiff saw Dr. Marc Serret, M.D., a cosmetic surgeon, to have the cyst removed. (Tr. 636-38). Before aspirating the cyst, Dr. Serret examined Plaintiff and observed that she had full mobility and strength in her left hand and fingers. (Tr. 633).

On May 15, 2008, after two attempts to aspirate the cyst, Plaintiff attended a follow up examination with Dr. Claude-Jean Langevin, M.D. (Tr. 628). During this examination, Dr. Langevin noted that the cyst had comeback after two aspiration procedures but had become smaller. *Id*. Dr. Langevin also commented that Plaintiff wanted to wait before undergoing another procedure because the symptoms related to the cyst were minimal. (Tr. 628).

On March 30, 2009, Dr. Michael Harris, M.D. conducted a consultative examination of Plaintiff at the request of the BDD. (Tr. 651-58). Dr. Harris tested Plaintiff's strength throughout her body and rated Plaintiff's strength as slightly below normal in her left wrist flexors, wrist extensors, finger abductors, and finger adductors. (Tr. 651). A test of Plaintiff's ROM in her left wrist was also conducted. Dr. Harris found that Plaintiff's ROM for her dorsiflexion motion in her left wrist was slightly below normal, but all other movements in Plaintiff's left wrist were normal. (Tr. 653). Dr. Harris characterized Plaintiff's grasp, manipulation, pinch, and fine coordination functions as normal. (Tr. 651). During his overall evaluation, Dr. Harris wrote that

Plaintiff had a cyst on her left wrist and had a slight limitation in extension. (Tr. 657). Finally, Dr. Harris opined that Plaintiff was limited to sedentary or light work. (Tr. 658). The recommendation specifically stated that Plaintiff was limited to lifting 15-20 pounds occasionally, should not lift directly from the floor, and should avoid repetitive stooping or bending. *Id*. Notably, Dr. Harris did not preclude Plaintiff from performing any tasks involving fingering or manipulating. *Id*.

### C. Vocational Expert Testimony

During the hearing, Gene Burkhammer, a vocational expert, testified regarding Plaintiff's work history and abilities. (Tr. 37-41). Mr. Burkhammer indicated that Plaintiff had performed two jobs in the last 15 years at substantial gainful activity level. (Tr. 39). Both of these jobs were classified as unskilled, light work. *Id*. Next, the ALJ asked Mr. Burkhammer about a hypothetical worker who was 63 years old, with an eleventh grade education, no job-specific training, and capable of performing light work. (Tr. 40). The hypothetical worker could sit, stand, or walk for six hours in an eight hour work day. *Id*. However, the worker was precluded from using ladders, ropes, or scaffolds. *Id*. Additionally, the worker could only occasionally stoop, kneel, crouch, or crawl, and the worker was limited to pushing, pulling, lifting, or carrying ten pounds frequently and twenty pounds occasionally. *Id*. Mr. Burkhammer responded that this hypothetical worker could perform Plaintiff's past relevant work. *Id*.

Next, the ALJ asked Mr. Burkhammer about a second hypothetical worker who had the same characteristics as the first worker but with the added limitation that this person was only occasionally able to do handling or fingering operations bilaterally. (Tr. 41). Mr. Burkhammer testified that this hypothetical worker would not be able to perform Plaintiff's past relevant work. *Id*.

### III. ALJ's DECISION

After his review of the record, ALJ Round determined that Plaintiff was not disabled as defined by the Social Security Regulations. (Tr. 15-23). At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 21, 2005. (Tr. 17). At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease constituted as a severe impairment. *Id*. But, at the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Next, the ALJ determined that Plaintiff was able to perform a range of light work. *Id*. Specifically, the ALJ found that Plaintiff could "lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently and c[ould] sit, stand, and/or walk for 6 hours each in an 8-hour work day, all with normal breaks." *Id*. ALJ Round further noted that Chambliss could not use ladders, ropes or scaffolds, but could stoop, kneel, crouch, and crawl occasionally. *Id*. At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a retail sales clerk and assembler. (Tr. 22).

### IV. DISABILITY STANDARD

A claimant is not entitled to receive Disability Insurance benefits or Supplemental Security Income benefits unless the individual establishes that she is disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423. The claimant is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## V. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id*. The reviewing court must determine if substantial evidence exists supporting the ALJ's findings. *Elkins v. Sec'y of Health & Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981). When making this determination, the reviewing court is not limited to a review of the evidence cited by the ALJ's opinion. *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir 1989). This is not a *de novo* review but, the court may examine any evidence on the record presented to the ALJ, even if the evidence was not discussed in the ALJ's opinion. *Mathews v. Weber*, 423 U.S. 261, 263 (1976). If the ALJ's decision is supported by substantial evidence then the decision must be affirmed even if there is substantial evidence supporting the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1989).

## VI. ANALYSIS

### A. Severe Impairment

The second step of the five step analysis requires an ALJ to examine the severity of the claimant's impairments. The severe impairment inquiry serves as a screening function, allowing an ALJ to eliminate groundless claims at an early stage in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). At this step, a claimant must show that she has an impairment which significantly limits her ability to perform one or more basic work activities. 20 C.F.R. § 404.1520(c). The Sixth Circuit gauges the severity of the impairment using a *de minimis* standard. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 691-92 (6th Cir. 1985)

(adopting the standard from *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). Under this standard, the impairment will only be deemed non-severe if the impairment is "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985).

As an initial point, the record clearly indicates that Plaintiff has a cyst on her left wrist. (Tr. 259, 628, 633, 658). The diagnosis of a cyst, however, does not by itself constitute substantial evidence of a severe impairment. The mere diagnosis of a condition is insufficient to support a conclusion regarding the severity of that condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). Further examination of the medical evidence is required.

The Court affirms the ALJ's conclusion that Plaintiff's cyst was not a severe impairment because this finding is supported by the substantial evidence in the record. Dr. Serret found that Plaintiff had a full ROM in her wrist. (Tr. 633). Dr. Sioson and Dr. Serret rated Plaintiff's strength in her left hand as normal. (Tr. 254, 633). Three different doctors characterized Plaintiff's grasp and other related functions as normal. (Tr. 254, 417, 651). Finally, the record contained three medical opinions regarding Plaintiff's physical limitations and none of these doctors placed any limitation on Plaintiff's ability to handle or manipulate. (Tr. 259, 419, 658).

The Court rejects Plaintiff's argument that remand is warranted because there was substantial evidence in the record that the cyst was a severe impairment. Even under the *de minimis* standard, not all impairments are severe. See *Farris*, 773 F.2d at 90. While two doctors recorded that Plaintiff had a less than normal ROM in her left wrist, these abnormalities were not

8

addressed by the doctors during their evaluations of Plaintiff's overall abilities. (Tr. 254-59, 651-58).

For example, Dr. Sioson recorded a slightly below normal ROM in Plaintiff's right and left wrists. (Tr. 256). However, all of the other objective tests he conducted on her wrists resulted in normal findings. Specifically, Plaintiff's strength measurements, grasp, manipulation, pinch, and fine coordination functions were all described as normal. (Tr. 254-58). At the end of his report, Dr. Sioson opined that Plaintiff was not limited in her ability to perform work related tasks beyond her own complaints of pain. (Tr. 259).

Similarly, Dr. Harris examined Plaintiff and found limitations in the ROM in her left wrist. (Tr. 653). Dr. Harris also rated the strength in Plaintiff's left wrist as slightly less than average. (Tr. 651). But, in this same report, Plaintiff's grasp, manipulation, pinch, and fine coordination functions in her left hand were all described as normal. (Tr. 651). Further, Dr. Harris provided a detailed description of Plaintiff's limitations which did not include any limitation on her ability to handle, finger, or manipulate. (Tr. 658).

These were the only two doctors who found any abnormality in the ROM in Plaintiff's left wrist. Contrary to Plaintiff's position, neither of these doctors limited Plaintiff's ability to perform basic work activities related to handling, fingering, or manipulating in their summaries of Plaintiff's limitations. Based on these medical records, it was reasonable for the ALJ to conclude that the abnormality in Plaintiff's wrist was a condition that had only a minimal effect on her ability to perform basic work functions.[3]

---

[3] As further support for affirming the finding of a non-severe impairment, other district courts have affirmed the ALJ's findings when presented with similar factual scenarios. *See Denson v. Astrue*, No. 4:10cv278-SPM/WCS, 2011 WL 2446327, at *11 (N.D. Fla. May 11, 2011)

### B.  Consideration of Cyst at Later Steps

Even assuming, *arguendo*, that the ALJ erred by finding that the cyst was a non-severe impairment, it did not constitute reversible error. Once the ALJ found that a severe impairment existed, the regulations required him to continue with the remaining steps of the evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  An erroneous finding that an impairment is non-severe does not constitute reversible error if the ALJ considered the all of the claimant's impairments, both severe and non-severe, during the later steps of the analysis. *Id.*

Plaintiff argues that the ALJ did not consider her cyst under the "umbrella" of impairments during later steps of the analysis. The Court rejects Plaintiff's argument because it is unsupported by the record. The ALJ found that Plaintiff's lumbar degenerative disc disease was a severe impairment. (Tr. 17).  The ALJ continued with his evaluation after step two based on the finding of a severe impairment.  The ALJ stated in his opinion that he considered all of Plaintiff's impairments both severe and non-severe during his RFC analysis. (Tr. 18). Specifically, the ALJ's opinion discussed both Dr. Sioson's and Dr. Harris's reports individually and discussed the evidentiary weight given to each. (Tr. 20). These two doctors were the only two physicians who identified any abnormalities in Plaintiff's left wrist.  The ALJ considered these two doctors' reports and accounted for their findings during his RFC evaluation. (Tr. 20). Therefore, the Court finds that the ALJ's conclusion that the cyst was a non-severe impairment

---

(affirming ALJ's conclusion that a cyst on Plaintiff's right wrist was a non-severe impairment when medical reports indicated that she had full dexterity and sensation in her hand and wrist).

did not constitute reversible error because the ALJ considered Plaintiff's cyst during later steps of his analysis. *See Maziarz,* 837 F.2d at 244.

### C. Plaintiff's Ability to Work

Evidence of Plaintiff's ability to perform past relevant work can be produced through the testimony of a vocational expert. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This testimony typically comes in response to hypothetical questions posed to a vocational expert. In order to constitute substantial evidence, the vocational expert's testimony must be based on a hypothetical question that "accurately portrays plaintiff's individual physical and mental impairments." *Id.* (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3rd Cir. 1984)).

During the hearing, ALJ Round asked the vocational expert a hypothetical question describing an individual who could only occasionally handle and finger bilaterally. (Tr. 40-41). In response to this question, the vocational expert testified that such an individual would not be able to perform Plaintiff's prior work. (Tr. 41). Plaintiff now asserts that the VE's response to this hypothetical proves that she is unable to return to her prior work and that she should be granted benefits pursuant to Rule 202.01 of the Medical-Vocational Guidelines.[4]

The Court finds Plaintiff's argument unpersuasive. The ALJ was free to disregard any limitations not supported by the medical evidence. *See Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints.") (*citing Hardaway v. Sec'y of*

---

[4] Medical-Vocational Rule 202.01 directs the ALJ to enter a finding of disabled when the claimant is a person of advanced age with limited education, who cannot return to his/her prior unskilled work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tables 1-3 (Rule 202.01).

*Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987)).  As discussed above, Dr. Sioson and Dr. Harris authored the only two medical reports identifying slight abnormalities in Plaintiff's left wrist. (Tr. 256, 653).  Both doctors opined regarding Plaintiff's limitations caused by her physical infirmities. (Tr. 259, 658).  Neither of these opinions contained any limitations related to fingering, manipulating, or handling. (Tr. 259, 658).  There were no other medical reports identified which contained any limitation on Plaintiff's ability to handle or finger bilaterally.  Therefore, it was reasonable for the ALJ to disregard Plaintiff's allegations that she had problems fingering, manipulating or handling, and likewise disregard the vocational expert's answer to the hypothetical question referencing such limitations.  *See Hargrove v. Astrue*, No. 4:10-cv-529, 2011 WL 741983, at *6 (N.D. Ohio Feb. 24, 2011) ("Because the ALJ did not find that all of Plaintiff's alleged symptoms were credible, he was free to disregard the VE's answers to the ALJ's third hypothetical and the hypothetical posed by Plaintiff's attorney, because both questions contained mental impairments which the ALJ discredited or found were unsubstantiated. . .").

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>Kenneth S. McHargh<br>United States Magistrate Judge

Date: November 29, 2011.